UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 21-cv-22066-BLOOM/Otazo-Reyes**

NATIONAL SPECIALTY INSURANCE
CO., a foreign corporation, as subrogee of
Christian Stenharg d/b/a/ South Beach
Charters,

    Plaintiff,

v.

MARQUIS YACHTS, LLC,

    Defendant.
_____/

## ORDER ON MOTION TO STRIKE

**THIS CAUSE** is before the Court upon Defendant Marquis Yachts, LLC's ("Defendant") Motion to Strike Paragraphs 14-34 of Plaintiff's Second Amended Complaint, ECF No. [26] ("Motion"), filed on August 11, 2021. Plaintiff National Specialty Insurance Co. ("Plaintiff") filed a Response in Opposition to the Motion, ECF No. [30] ("Response"), to which Defendant filed a Reply, ECF No. [31] ("Reply"). The Court has carefully reviewed the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

    **I.    BACKGROUND**

On June 3, 2021, Plaintiff initiated this subrogation action against Defendant arising from a fire on a 2016 model 55' VanDutch Motor Yacht ("Subject Vessel") manufactured by Marquis. *See generally* ECF No. [1]. According to the Second Amended Complaint, ECF No. [20] ("Complaint"), on March 31, 2016, Christian Stenharg ("Insured") purchased three VanDutch yachts from Marquis for a total amount of $1,500,000.00—a price below retail. *Id.* ¶¶ 35-36. There

was no written purchase agreement between Marquis and the Insured, nor were any express warranties provided. *Id.* ¶¶ 37-38.

On June 24, 2019, a fire occurred aboard the Subject Vessel while it was moored at a marina located at 300 Alton Road, Miami Beach, Florida. *Id.* ¶ 40. The fire was determined by investigators to be the result of a manufacturing defect in the electrical system of the Subject Vessel, which purportedly "existed at the time Marquis placed the Subject Vessel into the stream of commerce when it was sold to the Insured." *Id.* ¶¶ 44-50. As such, the Complaint asserts a single claim against Marquis for breach of the implied warranty of merchantability—i.e., that the Subject Vessel "would have an electrical system which was fit and capable of powering the Subject Vessel's necessary systems without causing a fire." *Id.* ¶ 64; *see also id.* ¶¶ 59-68.

In the Motion, Defendant seeks to strike the paragraphs 14-34 of the Complaint, which provide factual allegations regarding the contractual relationship between Marquis and VanDutch Marine Ltd. ("VanDutch") to manufacture VanDutch model yachts, the lawsuit that ultimately ensued between Marquis and VanDutch, and the circumstances under which the Insured purchased the Subject Yacht. The allegations are as follows:

### *History of Marquis and VanDutch Yachts*

14. Marquis was previously owned by Genmar Holdings, which filed for bankruptcy in 2009.

15. In 2010, the Pulaski, Wisconsin manufacturing facility (previously owned by Genmar Holdings) and the Marquis brand were purchased by the investment firm, J&D Acquisitions.

16. In 2013, Marquis and VanDutch Marine Ltd. ("VanDutch") entered in a contract entitled "Purchase Agreement for Construction of 120 VanDutch Yachts" ("the VanDutch Contract"), with an effective date of November 19, 2013.

17. Under the "VanDutch Contract" Marquis agreed to manufacture 120 VanDutch yachts from the inception of the Contract through December 30, 2014.

18. The 120 yachts consisted of all five VanDutch models- the 30', 40', 40' Walk-Around, 55' and the new 45' and 70'.

19. The manufacture of all VanDutch-brand yachts were to occur in Marquis' Pulaski, Wisconsin manufacturing facility.

20. In order to meet the production demands and timely perform its obligations under the VanDutch Contract, Marquis had to expand its workforce, dedicate a portion of its manufacturing facilities exclusively to the manufacture of the VanDutch yachts, make capital improvements, and borrowed money to fund necessary expenses.

21. Ultimately, production under the VanDutch Contract was reduced from the original 120 to 82, then down to 48, and then down to 36 as result of (a) delays in VanDutch supplying necessary production molds (b) delivering equipment that was un-useable without significant refurbishing and rehabilitation and (c) failure by VanDutch to make periodic down payments on invoices.

22. As early as 2015, production bottomed out at a total of only 17 yachts.

*Marquis Lawsuits Against VanDutch*

23. On April 22, 2015, Marquis commenced suit against VanDutch in the U.S. District Court for the Eastern District of Wisconsin, alleging breach of the VanDutch Contract.

24. As a result, the parties entered into negotiations that resulted in a Settlement Agreement and a new Manufacturing Agreement effective on May 4, 2015 ("the 2015 VanDutch Contract").

25. The 2015 VanDutch Contract required VanDutch to pay down payment invoices on each model yacht that Marquis agreed to manufacture for VanDutch; and provided for liquidated damages in the event of nonpayment or lay payments.

26. In February of 2016, Marquis commenced a second lawsuit against VanDutch in the District Court of Minnesota, alleging that during late 2015 and into 2016, VanDutch failed to make numerous invoice and final payments pursuant to the terms of the 2015 VanDutch Contract, causing over $3.8 million in damage to Marquis.

27. As a result, of VanDutch's various contract breaches, Marquis was forced to lay off employees specifically hired to build VanDutch-brand yachts.

28. Marquis suffered significant financial losses on each VanDutch yacht it constructed under the contracts with VanDutch.

29. The Subject Vessel was one that was manufactured by Marquis under the 2015 VanDutch Contract, at a significant loss to Marquis and during a period when the commercial relationship between VanDutch and Marquis had significantly soured.

3

30. In fact, the Subject Vessel was manufactured during the time the second lawsuit against VanDutch was pending, but not yet settled.

*Stenharg's Purchase of the Yacht*

31. In approximately March of 2016, the Insured became interested in purchasing VanDutch model yachts for purposes of a charter business in Florida.

32. He was unaware of Marquis' difficulties in manufacturing the VanDutch-brand yachts and its soured commercial relationship with VanDutch.

33. The Insured was also not made aware that Marquis had in fact commenced litigation twice against VanDutch; and that one lawsuit was ongoing at the time Marquis manufactured the Subject Vessel ultimately purchased by the Insured.

34. In fact, at the time of the sale to the Insured, Marquis was engaged in a "fire sale"- haphazardly selling its VanDutch-branded yacht stock at extremely discounted prices directly and not via dealers, and without written purchase contracts or written warranties- in order to recoup minimal costs to manufacture same.

*Id.* ¶¶ 14-34.

## II. LEGAL STANDARD

Rule 12(f) of the Federal Rules of Civil Procedure permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," granting courts broad discretion in making this determination. Fed. R. Civ. P. 12(f); *see also Morrison v. Exec. Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1318-19 (S.D. Fla. 2005); *Williams v. Eckerd Family Youth Alt.*, 908 F. Supp. 908, 910 (M.D. Fla. 1995). Under Rule 12(f), "[a] motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Harty v. SRA/Palm Trails Plaza, LLC*, 755 F. Supp. 2d 1215, 1218 (S.D. Fla. 2010) (internal quotation and citation omitted); *see also BB In Tech. Co. v. JAF, LLC*, 242 F.R.D. 632, 641 (S.D. Fla. 2007) (same); *Home Mgmt. Solutions, Inc. v. Prescient, Inc.*, 07-20608-CIV, 2007 WL 2412834, at *1 (S.D. Fla. Aug. 21, 2007) (same); *Action Nissan, Inc. v. Hyundai Motor Am.*, 617 F. Supp. 2d 1177, 1187 (M.D. Fla. 2008) (same). Courts have broad discretion in considering a motion to strike under Federal Rule of Civil Procedure

12(f). *See, e.g.*, *Sakolsky v. Rubin Mem'l Chapel, LLC*, 07-80354-CIV, 2007 WL 3197530, at *2 (S.D. Fla. Oct. 26, 2007). Irrespective of the Court's broad discretion, this ability to strike is considered to be drastic, and is often disfavored. *Thompson v. Kindred Nursing Ctrs. E., LLC*, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002) (quoting *Augustus v. Bd. of Pub. Instruction of Escambia Cnty.*, Fla., 306 F.2d 862, 868 (5th Cir. 1962)); *Fabing v. Lakeland Reg'l Med. Ctr., Inc.*, 8:12-CV-2624-T-33MAP2013 WL 593842, at *2 n.2 (M.D. Fla. February 15, 2013) (calling Rule 12(f) a "draconian sanction").

### III. DISCUSSION

In the Motion, Defendant argues that the allegations set forth in paragraphs 14-34 of the Complaint are immaterial and scandalous because they do not either directly or circumstantially prove the existence of manufacturing defect or how any defect caused the fire on the Subject Vessel. Defendant maintains that "these allegations are an undisguised attempt to prejudice Marquis by diverting the attention of the Court and jury to arguments and issues wholly unrelated to the claims at issue in this case." ECF No. [26] at 3. Plaintiff responds that the allegations "relate to the manner in which parts were secured for the subject yacht, the quality of the parts, and the financial constraints under which the yacht was manufactured, which may have led to shortcuts both in materials and workmanship." ECF No. [30] at 4. Plaintiff further contends that these allegations are not scandalous and present pertinent background information necessary to fully understand the condition in which the Subject Vessel was constructed and sold to the Insured. *Id.* at 6.

Upon review, the Court determines that the allegations in paragraphs 14-34 of the Complaint should not be stricken. First, Defendant has not met its heavy burden of demonstrating that the challenged allegations "have no possible bearing upon the subject matter of the ligation." *Cormack v. N. Broward Hosp. Dist.*, No. 08-61367-CIV, 2009 WL 247848, at *1 (S.D. Fla. Feb.

2, 2009) (citing *Craig Funeral Home, Inc. v. State Farm Mut. Auto. Ins. Co.*, 254 F.2d 569, 572 (5th Cir. 1958)). Rather, it is apparent that these allegations are probative of Plaintiff's breach of implied warranty of merchantability claim and provide background information relevant to establish a causal link between the circumstances surrounding the manufacturing process and the purported defect that led to the fire on the Subject Vessel. At this juncture, the Court finds no basis to strike the allegations as immaterial. Whether the facts, if any, supporting these allegations are admissible presents an evidentiary question that may be challenged at a later stage of the proceedings.

Additionally, the Court is not persuaded that the challenged allegations are scandalous. "The word 'scandalous' generally refers to any allegation that unnecessarily reflects on the moral character of an individual, states anything in repulsive language that detracts from the dignity of the court, or casts a cruelly derogatory light on a party or other person." *Badilo v. City of Deerfield Beach*, No. 13-60057-CIV, 2013 WL 3762338, at *1 (S.D. Fla. July 16, 2013) (citing *S.E.C. v. Lauer*, No. 03-80612-CIV, 2007 WL 1393917, at *2 (S.D. Fla. Apr. 30, 2007)). Here, paragraphs 14-34 do not allege any facts that either disparage or defame Defendant, or which charge Defendant with reprehensible conduct. Indeed, many of these allegations derive from Marquis' court filings against VanDuch, ECF No. [30-1], and explain how the Subject Vessel was constructed and the condition in which it was sold to the Insured. While the challenged allegations may reflect poorly on Defendant, the Court cannot conclude that they do so "unnecessarily" or that they cast "a cruelly derogatory light" on Defendant. *Badilo*, 2013 WL 3762338, at *1.

## IV. CONCLUSION

Accordingly, consistent with this Order, Defendant's Motion to Strike Paragraphs 14-34 of Plaintiff's Second Amended Complaint, **ECF No. [26]**, is **DENIED**.

Case No. 21-cv-22066-BLOOM/Otazo-Reyes

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 4, 2021.

_____
**BETH BLOOM
UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record